The document below is hereby signed.

Signed: January 13, 2011.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| GREATER SOUTHEAST COMMUNITY HOSPITAL CORP., I, *et al.*, | ) ) ) | Case No. 02-02250 (Chapter 11) (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| SAM J. ALBERTS, TRUSTEE FOR THE DCHC LIQUIDATING TRUST, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 04-10459 |
| | ) | |
| PAUL TUFT, *et al.*, | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |
| Defendants. | ) | |

MEMORANDUM DECISION FIXING AMOUNT
RECOVERABLE UNDER MOTION OF EPSTEIN
BECKER & GREEN P.C. FOR EXCESS EXPENSES AND ATTORNEYS' FEES

A Memorandum Decision of August 9, 2010, addressed the motion of Epstein Becker & Green P.C., for an award of attorneys' fees and expenses against the attorneys and law firm that represented the plaintiff in this adversary proceeding. The court ruled that Sam J. Alberts, lead counsel for the plaintiff,

was subject to sanctions, and directed that Epstein Becker file a statement of costs, expenses, and attorney's fees that reasonably flowed from and occurred as a result of Alberts' groundless motion seeking to vacate the order granting summary judgment and to reopen discovery (including fees and expenses reasonably incurred in pursuing the motion for sanctions).

Pursuant to that Memorandum Decision, Epstein Becker has now submitted a statement of fees and expenses to which Alberts has objected.  The matter was heard on November 12, 2010, and this constitutes the court's findings of fact and conclusions of law.

I

OF THE FEES BILLED BY DLA PIPER,
$55,178.50 IS RELATED TO OPPOSING THE MOTION TO
VACATE, AND $160,844.30 IS RELATED TO PURSUING SANCTIONS

Alberts raises an objection that some of the time billed by DLA Piper and sought to be recovered by Epstein Becker did not relate to the motion to vacate or the pursuit of sanctions.

Epstein Becker's attorneys' work in that regard began in early May 2007.  Epstein Becker has submitted billing statements showing the time spent working on this adversary proceeding, and Epstein Becker has reduced the DLA Piper time for those entries that it acknowledges are wholly or partially not compensable, and "[t]hose portions of the DLA Piper bills that are highlighted in yellow constitute the components of the claim" relating to DLA Piper's time.  I address below additional time that Alberts

2

objects is not compensable as not related to the motion to vacate or the motion for sanctions.  I address later Alberts' objection that the time is excessive.

A

TIME INCURRED THROUGH MAY 25, 2010
(DATE OF HEARING ON MOTION TO VACATE)

Entries of May 1 and 2, 2007 Are Not Related.  As of May 1 and May 2, 2007, Alberts had only asked why Epstein Becker had filed a document alerting the court that the motion for summary judgment was unopposed and ready for disposition, and had only proposed altered terms for a settlement.  Indeed, the order granting summary judgment was not entered until May 3, 2007, at 9:45 a.m.  Alberts was not threatening to file a motion for reconsideration of an order not yet entered.  Accordingly, none of the professional time on May 1 and 2, 2007, is recoverable.

2.4 Hours of Daniel Carrigan's Time on May 3, 2007 Is Related.  On May 3, 2007, at 9:45 a.m., the clerk entered the order granting Epstein Becker summary judgment.

At 10:04 a.m., Alberts sent an e-mail to Carrigan stating:

Dan, I plan to call the Court this afternoon to advise
them we will be seeking reconsideration of the order.
If you would like to join the call advise.

At 10:27 a.m. he sent a further e-mail stating that he planned to call the court at 1:00 p.m. and that:

I will explain to the Judge why we did not file a
response and advise him that he should withdraw the order
entered today.   If  he  requests  a  motion  for

3

reconsideration we will file it.
As reflected by Daniel Carrigan's time entries on May 3, 2007,
this necessitated Carrigan's spending, first, **1.45 hours** reacting
to that suggestion, and taking such steps as assuring that any
such call was limited to non-substantive discussions regarding
scheduling any motion for reconsideration.[1]  That time is
related.  The final time entry for May 3, 2007, reflects that
Carrigan also spent **.95 hours** regarding "begin preparation of
declaration exhibits in support of Opposition to anticipated
Motion for Reconsideration."  Accordingly, 2.40 hours of
Carrigan's time (1.45 + .95 hours) on May 3, 2007 is related.

     <u>Of Carrigan's May 3, 2007 Time, the Remaining 1.7 Hours Is</u>
<u>Not Compensable</u>.  Three sets of Carrigan's time entries on May 3,

---

[1]  The 1.45 hours of time includes the entry:

   examine and evaluate . . . communications from S. Alberts
   regarding entry of judgment, motion for reconsideration,
   intention  to  initiate  call  with  Court,  subject  of
   Plaintiff's presentation to Court, and begin to formulate
   responses(s) (.35).

It also includes the 1.10 hours in time entries beginning:

   telephone conferences - detailed voicemails - to Court's
   deputy clerk . . . and Court's Chambers regarding Court's
   schedule for conference call . . . .

and ending:

   finalize same to incorporate comments from R.
   DeRight/N. Dilloff (.15)[.]

4

2007 are not compensable.

Carrigan's first two time entries on May 3, 2007, totaling

**.2 hours**, did not relate to Alberts' later threat of seeking

reconsideration and is not compensable.

A later time entry totaling **.35 hours** states:

> conference call with R. DeRight and N. Dilloff regarding
> same and response(s), including draft response to prior
> e-mail communication proposing offer of confidentiality
> provisions circulated on May 2 (.35)[.]

It is impossible to tell what part of this .35 hours was devoted

to discussing the contacts with the court regarding a motion for

reconsideration and what part was devoted to discussing the

"prior e-mail communication proposing offer of confidentiality

provisions circulated on May 2."[2]  Because the latter category of

time is not compensable, none of the .35 hours can be treated as

compensable.[3]

A still later time entry on May 3, 2007, states:

> examine and evaluate multiple email communications from
> S. Alberts (.30); . . . conference call . . . regarding
> content of response (.30) ; prepare response (.35); . .
> . finalize response to incorporate R. DeRight/N. Dilloff
> comments (.20); cause same to be delivered to S. Alberts
> (N/C)[.]

---

[2]  At 11:44 a.m. on May 3, 2007, Carrigan faxed Alberts a
letter rejecting the plaintiff's counter-proposal for settlement
that Alberts had sent by e-mail on May 2, 2007.

[3]  It bears noting that the parties eventually reached a
settlement of all issues other than the issue of sanctions, and
this led to the plaintiff abandoning any right to pursue an
appeal of the order granting summary judgment.

This **1.15 hours** of time appears to be related to the issue of settlement, not the issue of the threat of a motion for reconsideration.  Among the e-mails Alberts had sent to Carrigan on May 3, 2007, was an e-mail of 1:35 p.m. from Alberts to Carrigan in which he stated:

> Dan, no one on our side can figure out what your clients' [sic] are angling for.  It appears for [sic] your actions and correspondence that they want to kill the settlement and are hoping to retain dismissal without the settlement.  If I am in error, advise.

Apparently a later e-mail (which is not in evidence) was sent by Alberts to Carrigan on May 3, 2007, at 1:47 p.m. because at 5:15 p.m. on May 3, 2007, Carrigan faxed Alberts a letter captioned "Re: *Your E-Mail Communications – 5/3/07, 1:47 p.m.*"  In that letter, Carrigan stated:

> Thank you for the above referenced e-mail communication. Our client's perspectives with respect to the revised Settlement Agreement delivered on April 18, 2007, and prior proposals, all of which have been rejected, and the "Reply" that was filed in compliance with the April 30, 2007 deadline established by the Court, are set forth in the correspondence dated April 30, 2007 and May 3, 2007, copies of which are attached for your convenience.

Accordingly, the evidence suggests that the .85 hours was spent addressing the issue of settlement, and Epstein Becker has failed to demonstrate that the .85 hours that appears to have led to this letter ought to be compensable as relating to the threatened motion for reconsideration.

Accordingly, a total of 1.7 hours of Carrigan's May 3, 2007 time (.2 + .35 + 1.15 hours) is not compensable.

Only One Hour of Neil Dilloff's May 3, 2007 Time Is
`Related. Neil Dilloff's time entries from May 3, 2007 begin
with a series of entries, regarding reviews of e-mails and
conferences, which fails to give any indication that the entries
concern the issue of Alberts seeking reconsideration. The time
in that regard will not be compensated. Then follow a series of
time entries, totaling 1.0 hour, which clearly indicates that the
entries arose because of Alberts' request for a conference call
with the court, or concern seeking sanctions. That 1.0 hour of
time is related.

David Folds's May 3, 2007 Time Is Not Compensable. David
Folds's time on May 3, 2007 is not compensable. It addressed
researching the requirements for obtaining the entry of final
judgment under Fed. R. Civ. P. 54 when the order granting summary
judgment did not dispose of all of the claims in the adversary
proceeding.

Much of the Time Billed for May 4 through May 8, 2007 Is Not
Compensable. On May 3, 2007, Alberts sent an e-mail to Carrigan
at 6:03 p.m. stating his belief that the parties had reached the
terms of, but had not executed, a settlement agreement. Carrigan
responded to this on May 4, 2007, asking Alberts to identify the
settlement agreement upon which he contended that the parties had
agreed. Alberts responded by an e-mail of May 4, 2007, stating
that it appeared from Carrigan's letter "that you believe no

7

agreement exists. If I am in error, please advise me. If you do

not, or cannot provide me with a clear answer by Monday, May 7,

3:00 pm, we will file our motion for reconsideration." Carrigan

responded by letter of May 7, 2007, again asking Alberts to

identify the settlement agreement.  Alberts responded by an e-

mail that day, proposing new terms for a settlement.  On May 8,

2007, Carrigan sent a letter rejecting Alberts' new offer, and

offering a "walk away" settlement.  Alberts responded that day by

an e-mail stating that it was clear that Carrigan's client "has

walked away from the deal," and that Carrigan had left the

plaintiff "with no choice but to file a motion for

reconsideration."  In a nutshell, this was a series of

communications in which, at the first stage, Alberts stated his

misguided belief that a deal had been reached and in which

Carrigan politely but firmly asked Alberts to identify the

agreement that had been allegedly accepted, and in which, at the

second stage, both parties made offers to settle the litigation

(offers that were rejected).  This was not work by Epstein

Becker's attorneys undertaken to prepare a response to the

forthcoming motion for reconsideration or work related to Epstein

Becker's later motion for sanctions.  Instead, it was Epstein

Becker's counsel's attempt to make clear to Alberts that no

settlement had been reached (in effect, a warning that the

threatened motion for reconsideration would be without

foundation), and an attempt to reach acceptable terms of settlement.  This was not work arising from Alberts' filing of the motion for reconsideration that led to the multiplication of proceedings, and thus is not compensable.  In addition, Folds's work on May 4, 2007 related to filing a motion under Fed. R. Civ. P. 54(b) to make the summary judgment order a final judgment, and is not compensable.

Some Specific Time Entries for May 4, 2007 Through May 8, 2007 Are Related.  As conceded by Alberts, some of the time entries for May 4, 2007 through May 8, 2007 is work relating to the motion for reconsideration:

.25 hours of N. Dilloff on May 4, 2007;

1.05 hours of Carrigan on May 7, 2007;

2.40 hours of Carrigan on May 8, 2007; and

.20 hours of Folds on May 8, 2007.

Only .95 Hours of Carrigan's and .05 Hours of N. Dilloff's Time on May 9, 2007, Is Related. On May 9, 2007, Carrigan spent .3 hours examining a recent decision concerning deepening insolvency, an issue that would have been a live issue on any appeal.  Alberts' threat of filing a motion for reconsideration of the order granting summary judgment was premised on his assertion that a settlement had been reached, and that on this basis the motion for summary judgment should not have been granted.  The threat did not concern asking the court to

9

reconsider its ruling regarding deepening insolvency.
Accordingly, this time is *not* compensable.  The balance of .95
hours spent by Carrigan and .05 hours spent by N. Dilloff on May
9, 2007, however, concerned inquiries regarding the reservation
of May 25, 2007 as a hearing date regarding Alberts' forthcoming
motion for reconsideration, and this time *is* related.

   The May 10, 2007 Entries Are Related.  Alberts filed his
motion for reconsideration (styled a Motion to Vacate) on May 10,
2007.  Alberts concedes that the time entries for May 10, 2007
are related.

   Only 2.05 Hours of Carrigan's Time on May 11, 2007 Is
Related.  The first .40 hours of Carrigan's time on May 11, 2007
concerned addressing a stipulation to extend the time for
director and officer defendants to respond to cross-claims, and
is not compensable. Alberts concedes that the balance of time
(2.05 hours) is related.[4]

   Only .20 Hours of N. Dilloff's Time on May 11, 2007 Is
Related.  N. Dilloff spent .35 hours on May 11, 2007 addressing
unrelated matters such as the issue of cross-claims, and the
issue of settlement, or engaging in communications with other

---

   [4]  Part of the time was for communications "regarding EBG
request, if any, for sanctions, and request for entry of judgment
under Rule 54(b) (.25)."  Because only the motion to vacate was a
basis for imposing sanctions, and it was appropriate to consider
when such sanctions ought to be sought, I treat this as time
related to the motion to vacate.

attorneys for which the subject matter of the communications is
not stated.  The remaining .20 hours *is* related.[5]

   Folds's 2.10 Hours of Time on May 11, 2007 Is Fully Related.
Epstein Becker claims that 2.10 hours of Folds's time on May 11,
2007 is compensable.  Alberts challenges the first time entry of
1.10 hours, but that time researching standards under Rule 60 and
the admissibility of settlement materials under the Federal Rules
of Evidence clearly related to the motion for reconsideration and

---

   [5]  Of this .20 hours, .10 hours was for "review emails from
R. DeRight and D. Temchine regarding sanctions and prepare
response to same."  Because only the motion to vacate was a basis
for imposing sanctions, and it was appropriate to consider
whether such sanctions ought to be sought, I treat this as time
related to the motion to vacate.

is related.[6]

<u>Michelle Schaefer's 5.30 Hours on May 11, 2007 Is Related</u>.
Alberts concedes that Michelle Schaefer's 5.30 hours of time on
May 11, 2007 is related.

<u>The Time Entries for May 12 through May 25, 2007 Are Largely
Related</u>.  The hearing on Alberts' motion to vacate was set for
May 25, 2007.  Almost all of the time from May 12 through May 25,
2007, was devoted to preparing for that hearing or preparing
motions that related to that hearing.  The docket entries
summarize the filings made during that time:

---

[6] Epstein Becker reduced Folds's 2.0 hours for "begin
preparation of draft Opposition to Motion to Vacate, including
factual background" by 1.0 hours ("per ct's op. 1 hr. out").  It
is unclear why Epstein Becker thought that reduction was
necessary.  I assume that this voluntary reduction was a reaction
to the court's observation that the factual background set forth
in the *motion for sanctions* (not the *motion to vacate*) was
devoted in substantial part to seeking recovery of non-
recoverable fees for work performed because of acts by Alberts
that were not sanctionable (that is, acts prior to Alberts'
threatening to file a motion for reconsideration of the order
granting summary judgment).

Epstein Becker made a total of two similar reductions of
other time spent in preparing an opposition to the motion to
vacate:

    05/13/07  Carrigan  .30 hours
    05/13/07  Folds     .90 hours

So a total of 2.20 hours of such reductions (1.90 hours of
Folds's time and .30 hours of Carrigan's time) were made
regarding the *motion to vacate* but not regarding the *motion for
sanctions*.  I have taken this in account in fixing the reasonable
amount of time for pursuing the motion for sanctions.

| Date | Dkt. No. | Docket Entry |
|------|----------|--------------|
| 05/21 | 317 | Epstein Becker & Green, P.C.'s Opposition to Plaintiff's Motion to Vacate order Granting Summary Judgment |
| 05/21 | 318 | Epstein Becker & Green, P.C.'s Motion in Limine with Respect to Plaintiff's Motion to Vacate Order Granting Summary Judgment |
| 05/21 | 319 | Notice of Filing for, Among Other Things, Order for in Camera Inspection Pursuant to Epstein Becker & Green, P.C.'s Motion in Limine with Respect to Plaintiff's Motion to Vacate Order Granting Summary Judgment Filed by Epstein Becker & Green, P.C. |
| 05/23 | 320 | Motion to Expedite Hearing on Defendant Epstein Becker & Green, P.C.'s Motion in Limine with Respect to Plaintiff's Motion to Vacate Order Granting Summary Judgment Filed by Epstein Becker & Green, P.C. |
| 5/23 | 321 | Objection To Epstein Becker & Green, P.C.'s Motion To Expedite Hearing On Defendant Epstein Becker & Green, P.C.'s Motion In Limine With Respect To Plaintiff's Motion To Vacate Order Granting Summary Judgment Filed by Sam Alberts, Trustee |
| 05/24 | 322 | Reply Epstein Becker & Green, P.C.'s Reply to Plaintiff's Objection to Motion to Expedite Hearing on Motion in Limine Filed by Epstein Becker & Green, P.C. |
| 05/24 | 323 | Order Dismissing as Unripe Motion in Limine (Entered: 05/24/2007) |
| 05/24 | 324 | Reply To Defendant Epstein Becker & Green's Opposition To Plaintiff's Motion To Vacate Order Granting Summary Judgment To Defendant Epstein Becker & Green And To Establish A New Briefing And Discovery Schedule Filed by Sam Alberts, Trustee |

Alberts has objected to the time spent working on the motion in limine and the motion for an expedited hearing concerning that

13

motion.  Schaefer's time entry for May 14, 2007, serves as a
summary explaining the reason for the motion in limine:

> Research regarding filing documents under seal and
> prepare summary of same for incorporation into D. Folds
> draft Motion in Limine, in light of Plaintiff's objection
> to disclosure of settlement communications (.40).[7]

Although the court dismissed the motion in limine as unripe, it
treated the motion as a supplemental memorandum, and made clear
that the evidentiary issues which it addressed were still live
issues that would be addressed at the hearing on May 25, 2007, to
the extent that the evidentiary issues arose at that hearing
(precisely what Epstein Becker's motion for an expedited hearing

---

[7]  As recited in paragraph 6 of the Motion in Limine:

Plaintiff's contentions in the Motion to Vacate place the
Communications between the parties squarely at issue.
Not only does Plaintiff assert that he understood that
there was a settlement agreement raising the issue of
whether his understanding was reasonable and can create
a good faith basis for a finding of excusable neglect
under Rule 60(b)(1) but Plaintiff also contends that EBG
violated the terms if not the spirit of the unidentified
settlement agreement by filing a Reply, which forms the
basis for Plaintiff's request for relief under Rule
60(b)(6).

It was appropriate to file the Motion in Limine.

on the motion in limine had sought).[8]   Although the court

concluded that it was unnecessary to address the issues raised by

the motion in limine by way of such a separate motion, Epstein

Becker's counsel ought not be faulted for having raised the issue

by way of the traditional way that an evidentiary issue is

briefed in advance of a hearing (namely, a motion in limine), and

for having asked the court to set the motion in limine for

hearing as part of the May 25, 2007 hearing.   Alberts opposed the

motion for expedited hearing on the basis that he had offered to

continue the hearing, but the court rebuffed his suggestion that

the evidentiary issues that might arise would be a ground for

---

[8]   The court's order dismissing the motion in limine stated:

**Epstein Becker's motion in limine is essentially a
supplemental memorandum of law in opposition to Alberts's
motion for reconsideration and will be treated as such,**
but it is both premature and unnecessary for the parties
to litigate the issues raised therein by way of separate
motion.

Order (Dkt. No. 323) at 3-4 (footnote omitted and emphasis
added).   In the footnote, the court stated:

To be clear, unless and until the court receives word
that the parties have agreed to continue the hearing on
Alberts's motion for reconsideration or one party moves
successfully for a continuance of that hearing, **the court
will expect the parties to be prepared to address all
arguments** raised by Epstein Becker in its opposition(s)
to Alberts's motion at the hearing on the motion,
**including Epstein Becker's arguments concerning the
admissibility of the exhibits that it wishes to present
at that hearing**.

Order at 4 n.3 (emphasis added).

15

continuing the hearing ("Under no circumstances should the 'motion' be used as an excuse by Alberts to continue unilaterally a hearing that was set at his own request."). Accordingly, Alberts' objections to the time spent on the motion in limine and the motion for an expedited hearing are overruled.

Although Alberts has objected to the first .20 hours of time spent by N. Dilloff on May 24, 2007, it may reasonably be inferred that this time was spent with respect to the pending motion in limine or with respect to the forthcoming hearing on the motion for reconsideration.

Alberts has objected to 3.60 hours of the 6.75 hours claimed by Epstein Becker with respect to N. Dilloff's time on May 25, 2007, but all but .20 hours of the 6.75 hours is clearly marked as relating to preparing for the hearing or representing Epstein Becker at the hearing. It may reasonably be inferred that the remaining .20 hours of time ("conference with R. DeRight") concerned the hearing, as that is an entry sandwiched in between the entries relating to preparing for and appearing at the hearing, and occurred on the actual day of the hearing when the obvious focus of N. Dilloff was on the hearing.

The following time entries, however, are unrelated to the motion to vacate and *not* compensable:

May 19, 2007    Folds's 1.2 hours of work on the motion for entry of a final judgment, thus reducing the 6.30 hours claimed to 5.10 hours

May 22, 2007     Carrigan's .40 hours evaluating Delaware
                 decision regarding deepening insolvency, thus
                 reducing the amount claimed from 0.95 hours
                 to 0.55 hours

May 23, 2007     N. Dilloff's .05 hours reviewing an
                 unidentified Alberts' e-mail, and .05 hours
                 reviewing an unidentified letter to Alberts,
                 thus reducing the amount claimed from 1.30
                 hours to 1.20 hours.

B

TIME SPENT AFTER THE MAY 25, 2009
HEARING ONLY MINIMALLY RELATED TO LITIGATING THE
MOTION TO VACATE THE ORDER GRANTING SUMMARY JUDGMENT

Beginning on May 29, 2007, Epstein Becker's attorneys
resumed working on the Motion for Entry of Final Judgment
Pursuant to Rule 54(b) and researching costs available under Rule
54. They also dealt with Epstein Becker's cross-claims against
other parties, Alberts' objection to Epstein Becker's proof of
claim, and negotiating a settlement with Alberts (of issues other
than the issue of sanctions). If Alberts had not engaged in
sanctionable conduct, this work would have been necessary.
Indeed, the work included research concerning costs incurred
prior to Alberts having filed the motion to vacate the order
granting summary judgment. Accordingly, all of this time ought
not be compensated. There are, however, some minor time that is
related to litigating the motion to vacate.

The time after May 25, 2007, related to litigating the
motion to vacate is as follows:

| Date | Attorney(s) | Related Time |
|------|-------------|--------------|
| May 29, 2007 | Carrigan | .60 hours (first block of time entries)[9] |
| May 29, 2007 | N. Dilloff | .20 hours[10] |
| May 30, 2007 | N. Dilloff | .05 hours |
| June 4, 2007 | Carrigan | .15 hours[11] |
| June 4, 2007 | N. Dilloff | no compensable time[12] |
| June 11, 2007 | N. Dilloff | .20 hours |

---

[9] Carrigan spent 1.9 hours in telephone conferences with counsel for other defendants and working on the Rule 54(b) motion.  Only .60 hours of Carrigan's 2.5 hours of time set forth in his first block of time for May 29, 2007 is compensable.

[10] N. Dilloff spent .05 hours on May 29, 2007 reviewing a proposed final judgment order, which I take to mean the Rule 54(b) judgment.  The other .20 hours on that day related to e-mails from him to Carrigan regarding an "Order," which it may be inferred refers to the proposed "Order" (denying the motion to vacate) that Carrigan had prepared that day.  That time *is* compensable.

[11] Carrigan only billed for the .15 hours relating to the motion to vacate, and did not bill for time relating to Rule 54 and so forth.

[12] This time entry of .10 hours includes a conference with Carrigan "regarding final judgment order" (presumably the Rule 54 issue).  There is no allocation of that .10 hours between that part of the entry and the remainder of the entry ("Review order denying motion to vacate").

C

## TOTAL DLA PIPER TIME ADDRESSING ALBERTS' ATTEMPTS TO UNDO THE ORDER GRANTING SUMMARY JUDGMENT

In light of the foregoing, I conclude that **$55,178.50** represents the total amount of fees charged by DLA Piper and incurred by Epstein Becker during the period of May 1 through June 11, 2007, that can be attributed to addressing Alberts' attempts to set aside the summary judgment order:

| Date | Attorney | Hours | Hourly Rate | Amount |
|------|----------|-------|-------------|--------|
| 05/03/07 | Carrigan | 2.40 | $460 | $1,104.00 |
| 05/03/07 | N. Dilloff | 1.00 | $515 | 515.00 |
| 05/04/07 | N. Dilloff | 0.25 | $515 | 128.75 |
| 05/07/07 | Carrigan | 1.05 | $460 | 483.00 |
| 05/08/07 | Carrigan | 2.40 | $460 | 1,104.00 |
| 05/08/07 | Folds | 0.20 | $390 | 78.00 |
| 05/09/07 | Carrigan | 0.95 | $460 | 437.00 |
| 05/09/07 | N. Dilloff | 0.05 | $515 | 25.75 |
| 05/10/07 | Carrigan | 0.90 | $460 | 414.00 |
| 05/10/07 | N. Dilloff | 0.20 | $515 | 103.00 |
| 05/10/07 | Folds | 1.30 | $390 | 507.00 |
| 05/10/07 | Schaefer | 0.30 | $340 | 102.00 |
| 05/11/07 | Carrigan | 2.05 | $460 | 943.00 |
| 05/11/07 | N. Dilloff | 0.20 | $515 | 103.00 |
| 05/11/07 | Folds | 2.10 | $390 | 819.00 |
| 05/11/07 | Schaefer | 5.30 | $340 | 1,802.00 |
| 05/12/07 | N. Dilloff | 0.10 | $515 | 51.50 |

| | | | | |
|---|---|---|---|---|
| 05/13/07 | Carrigan | 3.70 | $460 | 1,702.00 |
| 05/13/07 | N. Dilloff | 0.10 | $515 | 51.50 |
| 05/13/07 | Folds | 0.90 | $390 | 351.00 |
| 05/14/07 | Carrigan | 3.95 | $460 | 1,817.00 |
| 05/14/07 | N. Dilloff | 0.45 | $515 | 231.75 |
| 05/14/07 | Folds | 5.10 | $390 | 1,989.00 |
| 05/14/07 | Schaefer | 0.40 | $340 | 136.00 |
| 05/15/07 | Carrigan | 4.05 | $460 | 1,863.00 |
| 05/15/07 | N. Dilloff | 0.35 | $515 | 180.25 |
| 05/15/07 | Folds | 6.30 | $390 | 2,457.00 |
| 05/15/07 | Schaefer | 1.70 | $340 | 578.00 |
| 05/16/07 | Carrigan | 1.20 | $460 | 552.00 |
| 05/16/07 | N. Dilloff | 2.15 | $515 | 1,107.25 |
| 05/16/07 | Folds | 4.90 | $390 | 1,911.00 |
| 05/17/07 | Carrigan | 2.50 | $460 | 1,150.00 |
| 05/17/07 | N. Dilloff | 0.15 | $515 | 77.25 |
| 05/17/07 | Folds | 4.50 | $390 | 1,755.00 |
| 05/17/07 | Schaefer | 0.70 | $340 | 238.00 |
| 05/18/07 | Carrigan | 4.15 | $460 | 1,909.00 |
| 05/18/07 | N. Dilloff | 0.60 | $515 | 309.00 |
| 05/18/07 | Folds | 1.50 | $390 | 585.00 |
| 05/19/07 | N. Dilloff | 0.10 | $515 | 51.50 |
| 05/19/07 | Folds | 5.10 | $390 | 1,989.00 |
| 05/20/07 | Folds | 0.60 | $390 | 234.00 |
| 05/21/07 | Carrigan | 5.95 | $460 | 2,737.00 |
| 05/21/07 | N. Dilloff | 0.20 | $515 | 103.00 |
| 05/21/07 | Schaefer | 1.80 | $340 | 612.00 |
| 05/22/07 | Carrigan | 0.55 | $460 | 253.00 |
| 05/22/07 | Folds | 2.60 | $390 | 1,014.00 |
| 05/22/07 | Schaefer | 1.00 | $340 | 340.00 |

| 05/23/07 | Carrigan | 5.85 | $460 | 2,691.00 |
| 05/23/07 | N. Dilloff | 1.20 | $515 | 618.00 |
| 05/23/07 | Folds | 3.40 | $390 | 1,326.00 |
| 05/24/07 | Carrigan | 5.95 | $460 | 2,737.00 |
| 05/24/07 | N. Dilloff | 2.40 | $515 | 1,236.00 |
| 05/24/07 | Folds | 3.30 | $390 | 1,287.00 |
| 05/25/07 | Carrigan | 4.95 | $460 | 2,277.00 |
| 05/25/07 | N. Dilloff | 6.75 | $515 | 3,476.25 |
| 05/25/07 | Folds | 5.00 | $390 | 1,950.00 |
| 05/29/07 | Carrigan | 0.60 | $460 | 276.00 |
| 05/29/07 | N. Dilloff | 0.20 | $515 | 103.00 |
| 05/30/07 | N. Dilloff | 0.05 | $515 | 25.75 |
| 06/04/07 | Carrigan | 0.15 | $460 | 69.00 |
| 06/11/07 | N. Dilloff | 0.20 | $515 | 103.00 |
| **TOTAL** | | 128.00 | | **$55,178.50** |

D

TIME SPENT ON THE PURSUIT OF SANCTIONS

As discussed below, except for the period of May 25, 2007 to July 31, 2007, those time entries of DLA Piper after May 25, 2007, for which Epstein Becker seeks compensation were largely related to the motion for sanctions. Nevertheless, as concluded in another part of this decision, the time spent pursuing sanctions was far more than it reasonably would have been had Epstein Becker limited its request for fees to Alberts' conduct in seeking to set aside the order granting summary judgment. The time related to seeking sanctions, regardless of what conduct it addressed, is set forth below.

21

Time in Period of May 25 to July 12, 2007.  The following
time entries in the May 25 to July 12, 2007, time period that *are*
related to the motion for sanctions (in contrast to litigating
the motion to vacate) are:

June 25, 2007   Carrigan        .25 hours

June 25, 2007   S. Dilloff     1.10 hours

June 26, 2007   Carrigan        .10 hours[13]

June 26, 2007   N. Dilloff      .05 hours

June 26, 2007   Folds           .60 hours

June 26, 2007   S. Dilloff      .80 hours

July 12, 2007   Carrigan        .20 hours[14]

Time Entries After July 12, 2007 Which Alberts Objects Are
Not Related to Seeking Sanctions.  The following objections to
time entries after July 12, 2007 as being unrelated to the
sanctions motion are **overruled**:

---

[13]   Alberts concedes this .10 hours.  The initial .10 hour
time entry refers to sanctions work but that work is lumped with
other matters.

[14]   This .20 time entry reads:

   [E]xamine and evaluate email inquiry from R. DeRight
   regarding Initial Complaint, W/C [White & Case]
   Response to EBG Motion to Dismiss Initial Complaint,
   First Amended Complaint, EBG Summary Judgment Motion
   and 2/9/05 initial conference with Trustee's counsel,
   identify excerpts from record and EBG Motion to strike
   responsive thereto[.]

The only reason to spend time on those tasks was to address the
issue of sanctions.

22

- Alberts objects to Carrigan's expenditure of .30, .50, .15, .15, and .10 hours on, respectively, July 19, 20, and 30, and September 5, and 17, 2007.  This time was an evaluation of whether certain settlements between the plaintiff and other defendants, and a resulting bar order, would impact Epstein Becker's sanctions claims.

- Alberts also objects to .20 hours of time Carrigan spent on August 3, 2007 ("begin preparation of case evaluation"), but the only case Carrigan was beginning to prepare was the sanctions motion.

- Similarly, Alberts objects to 1.20 and 2.00 hours spent by N. Dilloff on August 29 and 30, 2007, in preparing for and participating in conference calls and telephone conversations, but other time entries make clear that the conference calls and telephone conversations related to the ongoing assessment of pursuing sanctions, and such entries as Carrigan's for August 24 and 29, 2007, make clear that the conference call of August 30, 2007, was a significant conference call with the client to address the scope of sanctions to be sought.

- Finally, Alberts objects to .15 hours of Carrigan's time on September 5, 2007 and .10 hours of Carrigan's time on September 17, 2007, but from the time entries

of August 19, 2007, and September 14, 2007, I infer

that this work addressed making sure that a settlement

(including a bar order called for by the settlement)

would not affect Epstein Becker's seeking sanctions.

Accordingly, these time entries related to the pursuit of

sanctions.

The objection to the following time entry is **sustained**:

September 28, 2007  N. Dilloff      0.30 hours

This related to "Ms. Chick and publicity" and does not appear

related to the sanctions motion.  Even if the .30 hours was time

addressing publicity that might arise from the sanctions motion,

it was not time spent in litigating the sanctions motion.

The objections to the following time entries (or portions of

time entries) are **sustained**:

October 1, 2007     N. Dilloff        0.10 hours

October 11, 2007    Folds             0.10 hours[15]

Accordingly, after May 25, 2007, the work on the motion for

sanctions totaled **$160,844.30** as shown on the chart on the next

page.

---

[15]  This was time reviewing a notice of stipulated dismissal
of claims against D&O defendants, and has not been shown to be
related to seeking sanctions.

24

| Date | Attorney | Hours | Hourly Rate | Amount |
|---|---|---|---|---|
| 06/25/07 | Carrigan | 0.25 | $460 | 115.00 |
| 06/25/07 | S. Dilloff | 1.10 | $350 | 385.00 |
| 06/26/07 | Carrigan | 0.10 | $460 | 46.00 |
| 06/26/07 | N. Dilloff | 0.05 | $515 | 25.75 |
| 06/26/07 | Folds | 0.60 | $390 | 234.00 |
| 06/26/07 | S. Dilloff | 0.80 | $350 | 280.00 |
| 07/12/07 | Carrigan | 0.20 | $460 | 92.00 |
| 07/18/07 | Carrigan | 1.20 | $460 | 552.00 |
| 07/19/07 | Carrigan | 0.30 | $460 | 138.00 |
| 07/20/07 | Carrigan | 0.50 | $460 | 230.00 |
| 07/30/07 | Carrigan | 0.15 | $460 | 69.00 |
| 09/11/07 Bill thru 08/31/07 | Carrigan<br>N. Dilloff | 17.20<br>5.50 | $500<br>$550 | 8,600.00<br>3,025.00 |
| 11/05/07 Bill thru 09/30/07 | Total amount claimed, less<br>N. Dilloff | 137.80<br><br>-0.30 | mixed<br><br>$550 | 60,798.00<br><br>-165.00 |
| 11/15/07 Bill for October 2007 | Total amount claimed, less<br>N. Dilloff<br>Folds | 76.40<br><br>-0.10<br>-0.10 | mixed<br><br>$550<br>$450 | 35,672.00<br><br>-55.00<br>-45.00 |
| 12/07/07 Bill thru 11/30/07 | Total amount claimed | 108.80 | mixed | 50,587.50 |
| 01/17/08 Bill for December 2007 | N. Dilloff<br>Carrigan | 0.10<br>0.20 | $550<br>$500 | 55.00<br>100.00 |
| 03/10/08 Bill for February 2008 | N. Dilloff<br>Carrigan | 0.10<br>0.10 | $550<br>$500 | 55.00<br>50.00 |
| **TOTAL** | | **350.75** | | **$160,844.30** |

II

ALBERTS' OBJECTION THAT DLA PIPER'S TIME SPENT LITIGATING THE
MOTION TO VACATE SHOULD BE REDUCED IS SUSTAINED ONLY IN PART,
AND $54,827.50 WILL BE AWARDED TO EPSTEIN BECKER FOR THAT TIME

Alberts objects to the reasonableness of the DLA Piper fees

(determined above to be $55,178.50) for litigating the motion to

vacate:

> 11.  . . . A total of four DLA attorneys worked on
> responding to the Motion to Vacate. From the time
> records, several of the actions appear duplicative.
> Moreover, several hours were spent performing highly
> questionable or otherwise unduly speculative tasks, such
> [as] preparing cross-examination of witness testimony
> that was never suggested by the Trust and assessing how
> unrelated case matters could theoretically affect the
> Motion to Vacate (such [as] the Trust's actions against
> Mel Redman and the D&Os).

> 12.  By way of comparison, all time billed by White
> & Case on the Motion to Vacate, including the original
> Motion, the Reply brief and oral argument on May 25, 2007
> totaled only 22.50 hours, at a billed value of
> $10,152.00. . . .  Although such fees do not constitute
> a limitation on what Applicant may seek to recover under
> the Memorandum and Order, they are certainly an indicator
> or milestone by which the Court can assess the
> reasonableness of the Fee Request under the facts and
> circumstances.

> 13.  At bottom, Respondent entirely defers to the
> Court on this issue of what reduction (if any) is
> appropriate, but notes that a reduction of at least 15
> percent would appear appropriate.

Alberts Oppos. at 6 (footnote omitted).

Cross-Examination Preparation.  As to the objection

regarding cross-examination preparation as an example of "highly

questionable or otherwise unduly speculative tasks," because DLA

Piper was "preparing cross-examination of witness testimony that
was never suggested by the Trust," a review of the motion to
vacate (and of the reply to the opposition to that motion)
demonstrates that it was entirely possible that Alberts might
have testified.

The Motion to Vacate, filed on May 10, 2007, stated:

    1. Since mid-March 2007, the Trustee understood that
he had reached agreement with Defendant Epstein, Becker
& Green ("EBG") resolving all issues in dispute between
the parties. See Declaration of Sam J. Alberts at ¶ 4,
attached hereto as Exhibit A.
    2. Based upon the understanding that the parties had
reached an agreement with respect to the matters in
dispute between them, the Trustee cancelled depositions
of EBG partners that were to have occurred in March, and
otherwise ceased litigation efforts including responding
to discovery propounded by EBG. Id.
. . .
    14.  The Trustee avers that the Summary Judgment
Order should be vacated because his good faith belief
that the parties reached agreement in March 2007, prior
to his deadline to file an opposition to EBG's motion for
summary judgment (April 16, 2007), explains why he did
not file an opposition to the summary judgment motion or
conduct and answer discovery.  These facts constitute
"excusable neglect" pursuant to Rule 60(b)(1).
    15. Moreover, the Summary Judgment Order should also
be vacated to "accomplish justice" pursuant to Rule
60(b)(6). [Footnote omitted.]  EBG should not be granted
judgment in its favor when it reached agreement with the
Trustee to consensually resolve this matter and did not
so inform the Court in its Reply.

The plaintiff's reply to the opposition to the motion to vacate
was filed at 5:05 p.m. on the afternoon of May 24, 2007, prior to
the hearing the next morning on the motion to vacate.  The reply
stated, for example:

What is of relevance is that after the parties reached an

agreement in principal on all disputes in March, the
Trustee agreed to suspend discovery and litigation in
order to save both sides fees and costs. Also of
relevance is the fact that during the period in which the
parties were exchanging comments to formal settlement
papers in April, EBG gave no indication that it would
continue to litigate the Summary Judgment Motion or would
jettison the settlement if the agreement was not executed
by any date certain.

Thus, it was sound litigation preparation to think through how

best to cross-examine Alberts.  Nor does the time appear to have

been excessive.[16]

Tracking Unrelated Case Matter.  As to the objection to time "assessing how unrelated case matters could theoretically affect the Motion to Vacate (such [as] the Trust's actions against Mel Redman and the D&Os)," there was only one time entry of that character, .15 hours of Carrigan on May 23, 2007:

examine and evaluate electronically filed Notice of

---

[16]  The time spent on cross-examination preparation appears to have been limited to:

1.05 hours on May 13, 2007 ("begin to prepare outline for x-exam of Plaintiff for 5/25 hearing if necessary");

part of 1.10 hours on May 15, 2007 ("amend and supplement outline for Response/Declaration/possible testimony/S. Alberts cross-examination, in part with N. Dilloff");

part of 1.60 hours on May 18, 2007 ("continue to outline testimony for 5/25 hearing and cross-examination of S. Alberts, if necessary, for 5/25 hearing");

.20 hours on May 22, 2007 ("continue, in part in conjunction with D. Folds on potential testimony for 5/25 hearing with focus upon 'other' explanations for Plaintiff's failure to execute tendered agreements other than 'understanding' alleged by Plaintiff");

part of 2.85 hours on May 23, 2007 ("continue to prepare for 5/25 hearing, with focus upon testimony, exhibits and cross-examination of Plaintiff, in part in conjunction with N. Dilloff"); and

part of 1.40 hours on May 24, 2007 ("continue, in part in conjunction with D. Folds, to prepare outline for testimony and for cross-examination of Plaintiff for 5/25 hearing based upon 'new' allegations in Plaintiff's Reply").

Continuance of Hearing/settlement with M. Redman/D&O
Defendants, earmark same for inclusion in 5/25 hearing
exhibits (.15)[.]

Because Epstein Becker was pointing to its repeated insistence that litigation of its motion for summary judgment was *not* to be affected by adjustments to discovery deadlines that other parties were agreeing to (in order to accommodate settlement efforts) and was pointing to the delay that other parties were encountering as precisely the type of delay as to which it steadfastly refused to agree, Carrigan's .15 hours was appropriate time to be treated as occasioned by the motion to vacate.

Duplicative or Excessive Time Entries.  Although Alberts raises an objection that certain time entries are duplicative or excessive, he points to only one 1.8-hour time entry (discussed below).  My review suggests that DLA Piper's 128.05 hours of time litigating the motion to vacate was not duplicative.  Carrigan carried the laboring oar on preparing the opposition to the motion to vacate, and Folds carried the laboring oar on preparing the motion in limine and related work.

I calculate that 2.45 hours was devoted to reacting to Alberts' e-mail advising that he was contacting the court by telephone to discuss why he did not oppose the motion for summary judgment.  That time was neither excessive nor duplicative.

I calculate that 33.65 hours was spent on evidentiary issues regarding settlement negotiation documents (the motion in limine,

motion for expedited hearing, and submitting the proposed
settlement documents under seal), as follows:

| Date | Carrigan | Folds | Neil Dilloff | Schaefer | Total |
|------|----------|-------|--------------|----------|-------|
| 5/11/2007 |  | 1.10 |  |  | 1.10 |
| 5/11/2007 |  |  |  | 1.80 | 1.80 |
| 5/13/2007 |  | 0.90 |  |  | 0.90 |
| 5/14/2007 |  |  |  | 0.40 | 0.40 |
| 5/15/2007 | 1.45 |  |  |  | 1.45 |
| 5/16/2007 | 0.50 |  |  |  | 0.50 |
| 5/16/2007 |  |  | 0.60 |  | 0.60 |
| 5/16/2007 |  | 3.20 |  |  | 3.20 |
| 5/17/2007 | 0.65 |  |  |  | 0.65 |
| 5/17/2007 |  | 3.00 |  |  | 3.00 |
| 5/17/2007 |  |  |  | 0.70 | 0.70 |
| 5/18/2007 | 0.60 |  |  |  | 0.60 |
| 5/18/2007 |  |  | 0.20 |  | 0.20 |
| 5/19/2007 |  |  | 0.10 |  | 0.10 |
| 5/19/2007 |  | 3.80 |  |  | 3.80 |
| 5/21/2007 | 2.70 |  |  |  | 2.70 |
| 5/21/2007 |  |  | 0.20 |  | 0.20 |
| 5/21/2007 |  |  |  | 0.90 | 0.90 |
| 5/22/2007 | 0.35 |  |  |  | 0.35 |
| 5/22/2007 |  | 2.10 |  |  | 2.10 |
| 5/22/2007 |  |  |  | 1.00 | 1.00 |
| 5/23/2007 | 2.85 |  |  |  | 2.85 |
| 5/23/2007 |  | 1.80 |  |  | 1.80 |
| 5/24/2007 | 1.75 |  |  |  | 1.75 |
| 5/24/2007 |  |  | 0.20 |  | 0.20 |
| 5/24/2007 |  | 0.80 |  |  | 0.80 |
| TOTALS | 10.85 | 16.70 | 1.30 | 4.80 | 33.65 |

As can be seen, Folds (16.7 hours at $390 per hour) was carrying
the laboring oar on these issues, with assistance from Schaefer
(4.8 hours at $340 per hour). Carrigan (10.85 hours at $460 per
hour) was the attorney who had handled the settlement
negotiations, was principally handling the opposition to the
motion to vacate, and was preparing to testify if necessary. It

31

made sense that he would review Folds's and Schaefer's work.

Neil Dilloff (1.3 hours at $515 per hour) was the attorney who

handled the May 25, 2007 hearing, and he appropriately minimized

his time spent on these issues.  I will halve, however, 1.80

hours of Folds on May 19, 2007, contained in the time entry for:

> complete initial draft of Motion in Limine (1.80); and
> circulate for review (1.80); prepare proposed order on
> Motion in Limine (.20)[.]

There is no suggestion why circulating the Motion in Limine for

review should have taken 1.80 hours.  At $390 per hour for

Folds's time, that reduction of .9 hours comes to $351.00.

Accordingly, only a reduction of $351.00 is appropriate with

respect to the 33.65 hours of time working on the evidentiary

issues regarding settlement negotiation papers.

I calculate that 91.90 hours was spent on work (other than

the work addressing the evidentiary issues regarding settlement

negotiations) addressing the threatened motion for

reconsideration and the motion to vacate (carrying out that

threat):

| Date | Carrigan | Folds | N. Dilloff | Schaefer | Total |
|------|----------|-------|------------|----------|-------|
| 5/3/2007 | 0.95 | | | | 0.95 |
| 5/4/2007 | | | 0.25 | | 0.25 |
| 5/7/2007 | 1.05 | | | | 1.05 |
| 5/8/2007 | 2.40 | | | | 2.40 |
| 5/8/2007 | | 0.20 | | | 0.20 |
| 5/9/2007 | 0.95 | | | | 0.95 |
| 5/9/2007 | | | 0.05 | | 0.05 |
| 5/10/2007 | 0.90 | | | | 0.90 |
| 5/10/2007 | | | 0.20 | | 0.20 |
| 5/10/2007 | | 1.30 | | | 1.30 |

| | | | | |
|---|---|---|---|---|
| 5/10/2007 | | | | 0.30 | 0.30 |
| 5/11/2007 | 2.05 | | | | 2.05 |
| 5/11/2007 | | | 0.20 | | 0.20 |
| 5/11/2007 | | 1.00 | | | 1.00 |
| 5/11/2007 | | | | 3.50 | 3.50 |
| 5/12/2007 | | | 0.10 | | 0.10 |
| 5/13/2007 | 3.70 | | | | 3.70 |
| 5/13/2007 | | | 0.10 | | 0.10 |
| 5/14/2007 | 3.95 | | | | 3.95 |
| 5/14/2007 | | | 0.45 | | 0.45 |
| 5/14/2007 | | 5.10 | | | 5.10 |
| 5/15/2007 | 2.60 | | | | 2.60 |
| 5/15/2007 | | | 0.35 | | 0.35 |
| 5/15/2007 | | 6.30 | | | 6.30 |
| 5/15/2007 | | | | 1.70 | 1.70 |
| 5/16/2007 | 0.70 | | | | 0.70 |
| 5/16/2007 | | | 1.55 | | 1.55 |
| 5/16/2007 | | 1.70 | | | 1.70 |
| 5/17/2007 | 1.85 | | | | 1.85 |
| 5/17/2007 | | | 0.15 | | 0.15 |
| 5/17/2007 | | 1.50 | | | 1.50 |
| 5/18/2007 | 3.55 | | | | 3.55 |
| 5/18/2007 | | | 0.40 | | 0.40 |
| 5/18/2007 | | 1.50 | | | 1.50 |
| 5/19/2007 | | 1.30 | | | 1.30 |
| 5/20/2007 | | 0.60 | | | 0.60 |
| 5/21/2007 | 3.25 | | | | 3.25 |
| 5/21/2007 | | | | 0.90 | 0.90 |
| 5/22/2007 | 0.20 | | | | 0.20 |
| 5/22/2007 | | 0.50 | | | 0.50 |
| 5/23/2007 | 3.00 | | | | 3.00 |
| 5/23/2007 | | | 1.20 | | 1.20 |
| 5/23/2007 | | 1.60 | | | 1.60 |
| 5/24/2007 | 4.20 | | | | 4.20 |
| 5/24/2007 | | | 2.20 | | 2.20 |
| 5/24/2007 | | 2.50 | | | 2.50 |
| 5/25/2007 | 4.95 | | | | 4.95 |
| 5/25/2007 | | | 6.75 | | 6.75 |
| 5/25/2007 | | 5.00 | | | 5.00 |
| 5/29/2007 | 0.60 | | | | 0.60 |
| 5/29/2007 | | | 0.20 | | 0.20 |
| 5/30/2007 | | | 0.05 | | 0.05 |
| 6/04/2007 | 0.15 | | | | 0.15 |

| 6/11/2007 | | | 0.20 | | 0.20 |
|---|---|---|---|---|---|
| **TOTALS** | **41.00** | **30.10** | **14.40** | **6.40** | **91.90** |

Carrigan (41.00 hours at $460 per hour) was the attorney who had handled the settlement negotiations, had been intensively involved in the overall litigation, and was preparing to testify if necessary. It made sense that he would bear the laboring oar in opposing the motion to vacate. He reasonably obtained the assistance of Folds (30.10 hours at $390 per hour) and Schaefer (6.40 hours at $340 per hour) in performing such tasks as legal research and preparing exhibits for the hearing. Neil Dilloff argued the motion to vacate, and kept his time at only 14.40 hours at $515 per hour, a reasonable amount of time, which included 6.75 hours preparing for and attending the hearing on May 25, 2007. Accordingly, I find none of the time litigating the motion to vacate to be excessive or duplicative.

Comparison to Plaintiff's Own Time Litigating Motion to Vacate. Alberts argues that the DLA Piper time on the motion to vacate, at a value of approximately $55,000, is excessive because his work on "the original Motion, the Reply brief and oral argument on May 25, 2007 totaled only 22.50 hours, at a billed value of $10,152.00." He excludes his attorneys' time (not clearly identified) dealing with the possibility of contacting the court for a conference call to discuss why he did not oppose the motion for summary judgment, and his attorneys' time (7.6 hours) on work related to the motion in limine. More

34

fundamentally, however, Alberts' motion to vacate was that type
of unfounded motion, thrown against the wall in the hope that it
will stick, that is easy to prepare and file, but that takes a
lot of work to oppose to show why it is unfounded.  I overrule
this objection.

$54,827.50 is Compensable DLA Piper Work Occasioned by
Alberts' Efforts to Undo the Summary Judgment Order. To
recapitulate, only a $351.00 reduction is warranted with respect
to DLA Piper's time related to Alberts' efforts to undo the
summary judgment order and performed prior to its working on the
motion for sanctions.  Accordingly, the $55,178.50 in pertinent
time (including pursuit of the motion in limine and related work)
should be reduced by $351.00 to **$54,827.50**.

III

EPSTEIN BECKER IS ENTITLED TO RECOVER
$545.10 IN EXPENSES CHARGED BY DLA PIPER FOR MAY AND
JUNE 2007 AND THAT AROSE FROM LITIGATING THE MOTION TO VACATE

June 22, 2007 Bill.  Epstein Becker seeks to recover
$816.79 out of $894.79 in expenses billed by DLA Piper on its
bill dated June 22, 2007.  Of that $816.79, $722.70 is for a
disbursement dated 05/08/07 for "Duplicating - 7,227 copies @ .10
per page."  May 8, 2007 was two days prior to the filing of the
Motion to Vacate, and the time entries for May 2007 do not
suggest that any of the 7,227 copies were made in the period of
May 3, 2007 (when the court issued its order granting summary

35

judgment) and May 8, 2007, or occasioned by Alberts threat during that period that he would file a motion for reconsideration. Thus, Epstein Becker has not shown that any part of this $722.70 is compensable. The remaining $94.09 of expenses *is* compensable.[17]

July 16, 2007 Bill. Epstein Becker seeks to recover $378.41 of the $411.45 of disbursements for May and June 2007 that appear on DLA Piper's July 16, 2007 bill. Of this, $61.01 relates to delivering documents that had to be filed under seal (and necessarily White & Case's copy of such documents had to be hand-delivered to it); $6.60 was for duplicating charges recorded on June 20, 2007; $16.00 was for local travel; and $294.80 was for a transcript (presumably of the May 25, 2010 hearing). The $16.00 in travel expense is insufficiently described to treat it as relating to the motion to vacate. As to the $6.60 of duplicating charges, DLA Piper had incurred at least that much in duplicating charges in litigating the motion to vacate. Although not specifically identified on the bill, two paper copies (one delivered to the court, and one for DLA Piper to use) of the 95 pages of the opposition to the motion to vacate and exhibits were necessary at $9.50 each, for $19.00, and I will treat the $6.60

---

[17] The $4.88 charge for travel for delivering papers for filing under seal was appropriate because documents cannot be filed under seal electronically. The remaining $89.21 constitute transportation expenses incurred in attending the hearing on May 25, 2007.

duplicating charge as relating to that.  It was also appropriate to obtain a copy of the transcript of the hearing of May 25, 2007, for use in pursuing the motion for sanctions.  The other charges also relate to the motion to vacate.  Accordingly, $362.41 of the disbursements on the July 16, 2007 bill are compensable.

August 21, 2007 Bill.  DLA Piper's August 21, 2007 bill included a charge for a delivery on May 24, 2007, to Epstein Becker in New York, but I have no way of knowing whether that related to ongoing settlement discussions or the motion to vacate.  That bill also includes, and I will award, a $72.00 expense for Neil Dilloff's May 16, 2007 travel to this district to prepare for the May 25, 2007 hearing.  An $11.60 charge for on-line researching will also be awarded.  A $5.00 duplicating charge will be awarded as well because at least that amount of duplicating costs still remained unpaid that related to the motion to vacate.  The $126.32 in PACER charges for the period of 4/1 - 6/30/07 will not be awarded, as charges incurred in April 2007 would not be compensable.  Accordingly, $88.60 in expenses on this bill will be awarded.

Epstein Becker is thus entitled to **$545.10** in expenses incurred in litigating the motion to vacate (as opposed to the motion for sanctions).

IV

EPSTEIN BECKER IS ENTITLED TO
RECOVER $53,657.66 IN FEES WITH RESPECT TO
DLA PIPER'S TIME SPENT PURSUING THE MOTION FOR SANCTIONS

For reasons discussed below, not all of the time Epstein Becker spent pursuing the motion for sanctions is compensable. Its motion for sanctions was not tailored to seeking sanctions for Alberts' efforts to undo the grant of summary judgment. As stated in *Topalian v. Ehrman*, 3 F.3d 931, 937 (5th Cir. 1993), "the sanction should reflect only the costs or fees incurred in responding to those proceedings that are found to be unreasonable or vexatious." (Citations omitted.) As is evident from the analysis below, substantial work was devoted to marshaling facts pertinent to seeking sanctions for Alberts' conduct prior to the grant of summary judgment, and that work was not incurred by reason of reasonable efforts to seek sanctions regarding the motion to vacate.

A

As is implicit in the court's prior decision, Epstein Becker was justifiably offended by Alberts' threatening to file and then actually filing a motion for reconsideration (the motion to vacate). Alberts' unfounded allegations of wrongdoing had dragged Epstein Becker's good name through the mud for many months. Epstein Becker had worked hard to achieve finality in this proceeding, had scrupulously played by the rules, and had

made clear that it wanted the deadline for responding to the motion for summary judgment to be a firm deadline. Once it had obtained summary judgment demonstrating that Alberts' allegations of wrongdoing were unfounded, it is understandable that it devoted substantial resources in its effort to preserve that grant of summary judgment, and in seeking sanctions for Alberts' pursuing a motion to vacate the order granting summary judgment.

Nevertheless, Epstein Becker's motion for sanctions sought sanctions beyond seeking to recover fees for having to fight Alberts motion to vacate. The prior Memorandum Decision addressing the motion for sanctions ruled as follows:

> Pursuant to both 28 U.S.C. § 1927 and the inherent authority of the court, sanctions against Alberts are appropriate in an amount to compensate Epstein Becker for costs, expenses, and attorneys' fees incurred in addressing Alberts' motion to vacate summary judgment and reopen discovery. (*See* DE No. 313.) This amount may also include the portion of the costs, expenses, and attorneys' fees that Epstein Becker reasonably incurred in seeking sanctions for Alberts' motion to vacate summary judgment and reopen discovery, and for filing a reply to Alberts' response concerning that motion. (*See* DE Nos. 383, 413.)

> The motion for sanctions sought sanctions as well for the period preceding the granting of summary judgment. As noted previously, the motion's discussion of the conduct preceding the granting of summary judgment buttresses Epstein Becker's point that it viewed the plaintiff's claims as baseless and persistently pressed for a prompt resolution of the claims, and its point that, in light of the history of the proceeding, it was plain as could be that Epstein Becker intended the deadline for opposing its motion for summary judgment to remain firm despite ongoing settlement negotiations. Nevertheless, the discussion in Epstein Becker's sanctions motion of the conduct preceding the granting of summary judgment was

> longer than it reasonably would have been had Epstein
> Becker limited its request to Alberts' conduct after the
> entry of the summary judgment order. Accordingly, only
> a portion of the time spent regarding that discussion
> ought to be compensable.

Mem. Dec. at 54-55. In a footnote, the Memorandum Decision

stated:

> At the hearing on the motion for sanctions, the arguments
> were focused on the conduct preceding the entry of
> summary judgment, and very little of that time may
> reasonably be compensated.

Mem. Dec. at 55 n.18. The Memorandum Decision additionally noted

that certain matters ancillary to the motion for sanctions were

compensable (for example, Epstein Becker's successful litigation

of a motion to unseal certain documents, and litigation of

Alberts' unsuccessful motion to submit certain documents under

seal). Mem. Dec. at 55. DLA Piper's time entries trace the

shift to Epstein Becker's settling as of August 30, 2007, on

seeking sanctions for the entirety of the adversary proceeding.

DLA Piper realized early on that Alberts' motion to vacate

was sanctionable, as reflected by the following time entries

(emphasis added) on the day of or day following Alberts' threat

to file a motion for reconsideration:

- N. Dilloff's time entries for May 3, 2007: "email to D.

  Folds, D. Carrigan and R. DeRight regarding **request for**

  **sanctions** vs. Plaintiff (.15)."

- N. Dilloff's time entries for May 4, 2007: "conference

  with D. Carrigan **regarding sanctions and motion for**

40

**reconsideration** (.20)[.]"

Once Alberts filed his motion to vacate on May 10, 2007, the consideration of sanctions received renewed attention as reflected by the following time entries (emphasis added):

- Carrigan's time entries for May 11, 2007: "exchange email communications and telephone conferences with R. DeRight/N. Dilloff regarding EBG **request, if any, for sanctions**, and request for entry of judgment under Rule 54(b) (.25)[.]"

- N. Dilloff's time entries of May 11, 2007: "review emails from R. DeRight and D. Temechine **regarding sanctions** and prepare response to same (.10)[.]"

The focus at that juncture likely was on considering seeking sanctions for Alberts' attempts to undo Epstein Becker's hard-earned grant of summary judgment, conduct of Alberts that was the proverbial straw that broke the camel's back.

As is made evident by the examination of time entries that follows, Epstein Becker's attorneys decided to expand the scope of work for which sanctions would be sought.  First, at some point prior to August 30, 2007, the decision was made to include attorney work after the filing of the motion for summary judgment in November 2006.  (See discussion below of Carrigan's time entries of September 5 and 11, 2007, acknowledging that this was the case.)  Then on August 30, 2007, the decision was made to go

for broke and seek sanctions for the entire adversary proceeding.

The first indication that Epstein Becker's attorneys considered expanding the scope of the sanctions motion to extend to Alberts' conduct prior to May 2007 is in Carrigan's time entries of July 12, 2007:

> examine and evaluate e-mail inquiry from R. DeRight regarding Initial Complaint, W/C [White & Case] Response to EBG Motion to Dismiss Initial Complaint, First Amended Complaint, EBG Summary Judgment Motion and 2/9/05 initial conference with Trustee's counsel, identify excerpts from record and EBG Motion to strike responsive thereto (.20), and cause same to be summarized and forward to R. DeRight (N/C) [No Charge].

Carrigan's time entries for August 3, 2007, include:

> communications with Robert DeRight regarding proposed 28 U.S.C. Section 1927 Motion (N/C); begin, in part in conjunction with N. Dilloff, to outline response to R. DeRight request including case evaluation and budget (.30)[.]

From August 6 to August 8, 2007, DLA Piper attorneys began in earnest to investigate and consider the law concerning sanctions, spending a total of 7.50 hours in that regard, and conferring with DeRight in that regard on August 8, 2007.  That prompted a memorandum from DeRight, which in turn was followed by work by Carrigan on August 10, 2007, identifying time "arguably the source of excess fees/cost attributable to **inappropriate conduct during period 11/06 - 6/07** for incorporation into outline for 8/30 meeting with client's executive committee (.50),"[18]

---

[18]   It was in November 2006 that Epstein Becker had filed its motion for summary judgment and that Alberts had successfully

(emphasis added) and other time entries relating to preparing for

the August 30, 2007 conference with Epstein Becker.  After the

conference of August 30, 2007, with Epstein Becker, Carrigan's

last time entry of that date was:

> begin, in part in conjunction with N. Dilloff and D.
> Folds to develop Motion to recover **all fees/costs** under
> Section 1927.

[Emphasis added.]  The shift in deciding to seek sanctions for

work preceding Alberts' May 2007 acts, and, indeed, even acts

preceding the filing of the motion for summary judgment in

November 2006, was clearly in place on August 31, 2007, as

indicated by Carrigan's time entry of that date:

> Continue, in part in conjunction with D. Folds to outline
> a **basis for recovery of costs/fees prior to submission of
> Summary Judgment Motion in/about 11/06 under Section
> 1927**, with focus upon original/first amended complaint
> being based upon allegations of faulty business rather
> than legal advice inability of Trust to refute facts
> asserted in support of Summary Judgment Motion.

Epstein Becker is not entitled to recover attorneys' fees for

time spent attempting to show that Alberts' conduct in the entire

case was sanctionable.

  That sanctions were now to be sought for even the filing of

the original complaint itself was made clear by Carrigan's time

entry for September 4, 2007:

> Begin to amend/supplement and expand outline for Section
> 1927 motion in accordance with 8/30 conference call and

---

pleaded for further time to complete discovery in order to defend
against that motion.

> follow-up email communications from R. DeRight and N.
> Dilloff, with **focus upon Respondent's actions prior to
> filing of Original Complaint**, in part in conjunction with
> D. Folds (.80).

That the shift required greater work than a sanctions motion

restricted to Alberts' May 2007 acts is made clear by one of

Carrigan's time entry of September 5, 2007:

> continue, in part in conjunction with D. Folds to **expand
> outline for Section 1927 motion to address fees/costs
> from No. [sic] 2004 through final disposition, with focus
> upon Original Complaint through Plaintiff's response** and
> taking into account N. Dilloff 9/1/07 memorandum
> (1.65)[.]

[Emphasis added.] Carrigan spent yet another 1.90 hours on

September 6, 2007 regarding "[c]ontinue to prepare outline **for**

**expanded Section 1927 motion.**"   [Emphasis added.] Then, for

September 7, 2007, Carrigan recorded this entry:

> continue in part in conjunction with D. Folds, to
> **identify** most pertinent D.C. precedent with respect to
> Section 1927 and **changes in legal theories and factual
> allegations from original complaint to first amended
> complaint to second amended complaint to initial response
> to S-J motion which support argument that plaintiff's
> counsel never had evidence to support legal malpractice
> claim thereby rendering entire case excessive and
> unnecessary** (.60)[.]

[Emphasis added.]  Again, for September 11, 2007, Carrigan's time

entries include a similar entry:

> continue, in part in conjunction with D. Folds to **expand
> original scope of Section 1927 motion from Post-Summary
> Judgment through grant of S-J period to all/substantially
> all of case**, with focus upon Respondent's shift from
> "failure to provide business advice" to Section 544
> Causes of Action to Avoidable Conveyance Actions without
> evidence that Opinion Letters were "fraudulent" at any

44

point in process    (.70).

(Emphasis added.)  This time, not addressed to sanctions for

Alberts' filing the motion to vacate, ought not be compensable.

Similarly, for September 12, 2007, Carrigan's time entries

include:

> continue, in part in conjunction with D. Folds to structure content Section 1927 motion with **focus upon Respondent's activities prior to filing Adversary Proceeding** (during 2, Chapter 11 Cases, during post-confirmation/pre-filing period **and during period from filing through filing of 1ˢᵗ Amended Complaint** – extensive knowledge of/access to "facts," flawed "business advice" cause of action, attempt to mischaracterize cross-collateralization provisions of documents, "Lumping" of Debtors to blur differences, distinctions, duties (.50).

(Emphasis added.)  Then, for September 13, 2007, Carrigan's time
entry states:

> Continue, in part in conjunction with D. Folds to prepare 1927 motion/Memorandum, with **focus upon 2/05 initial meeting and proposal for informal discovery, 12/04 – 1/05 EBG efforts to resolve with Trust's counsel, and 11/05 – 12/05 preemptive delivery of opinion letter drafts/emails to place Plaintiff/Counsel on notice with respect to "rubber stamp" allegations** (.60).

(Emphasis added.)  Folds's time entry for the same date states:

> Work on motion for fees, including **review numerous pleadings from underlying litigation, including complaints, briefing on motions to dismiss, briefings on discovery, summary judgment filings, and transcripts, for inclusion** in factual background and/or legal argument and draft introduction and parts of factual recitation in motion (4.50).

That, again, is going far beyond seeking sanctions for the motion

to vacate.  Folds's time entries for September 15 and 16, 2007,

are for working on the motion for fees:

> including sections on factual background, **original complaint, and first amended complaint** (4.80);

and

> including section on **second amended complaint,** court decision, and incorporating numerous specific references to the record (4.50).

(Emphasis added.) Again, this is drifting far away from seeking sanctions for Alberts' efforts to undo the grant of summary judgment, the only conduct the court has found to be subject to the imposition of sanctions.

There followed 31.70 hours of attorney time on the fee motion that do not identify what acts of Alberts were the focus, but it may be assumed that the focus included what Carrigan and Folds had been focusing on, namely conduct that the court eventually found was *not* to be subject to the imposition of sanctions. Although some of the time--such as general research regarding the standards for sanctions and for reasonableness of fees--was pertinent to seeking sanctions for the motion to vacate, research on the law regarding sanctions would have been somewhat less had the motion for sanctions been limited to Alberts' conduct in May 2007.

Then for September 21, 2007, Carrigan's time entry includes:

> Continue, in part in conjunction with D. Folds to amend, supplement, document 1927 motion, memorandum, exhibits, declarations, including **documents with respect to Respondent's role in prior and underlying Ch. 11 Cases** (2.60)[.]

46

Alberts' role in the chapter 11 cases was pertinent to seeking

sanctions for his conduct prior to May 2007, but was of no

meaningful pertinence to seeking sanctions for the motion to

vacate.  Similarly, on September 21, 2007, Folds spent 1.0 hours

on "review filings from bankruptcy case and adversary proceeding

and insert additional references to the record into the

memorandum."

The time entries after September 21, 2007, fail to identify

the conduct of Alberts that was the subject of the work, until

Carrigan's time entries for October 15, 2007, which included:

> continue to examine, evaluate and annotate opposition to
> Section 1927 motion and exhibits thereto and begin to
> outline response to address continuing failure to
> demonstrate factual basis for alleged EBG knowledge prior
> to 1999 transaction which is critical to all claims
> asserted vs. EBG knowledge prior to 1999 transaction
> which is critical to all claims asserted vs. EBG,
> repeated repacking [sic: "repackaging" was likely meant]
> of same claims in form of different causes of action in
> support of motions, prior motion to strike as opportunity
> for plaintiff/respondents to demonstrate/articulate
> factual basis their election to attempt to obfuscate by
> raising collateral matters (1.90)[.]

This, again, demonstrates that DLA Piper's efforts were directed

to conduct prior to May 2007.

To spare the reader, I will not quote from, but will instead

only characterize the next time entries that shed light on the

focus of DLA Piper's efforts regarding seeking sanctions.

Carrigan's time entries for October 17, 19, and 21, 2007, include

descriptions of time spent on planning a reply to Alberts'

47

opposition that make clear the focus was *not* on Alberts' conduct
in May 2007.  The same is true of 4.50 hours Carrigan spent on
October 22, 2007, in addressing preparation of the reply and
preparing for the November 27, 2007 hearing on the motion, and is
true of two .40 hour entries (Carrigan and Folds) of October 26,
2007 regarding 11 U.S.C. § 544(a) issues.  Again, on November 5,
2007, Carrigan's .80 hours of time had a "particular focus" on
issues not germane to Alberts' May 2007 conduct.  And on November
8, 2007, Carrigan's .90 hours of time relating to taking judicial
notice of Alberts' filings in adversary proceedings and the
chapter 11 case to evidence circumstantially Alberts' lack of
good faith does not appear related to addressing Alberts' May
2007 conduct.  Similarly, Carrigan's time entries of .50, .80,
.60, 2.50, .50, 6.90, and what appears to be the great majority
of 7.90 hours for, respectively, November 9, 14, 15, 16, 22, 24,
and 25, 2007, addressing facts pertinent to showing that Alberts'
allegations in the complaints were unfounded, were hours of time
not meaningfully pertinent to seeking sanctions for the motion to
vacate.

B

The point of all of the foregoing is that DLA Piper's time
spent on the motion for sanctions was far higher than it would
have been had it merely focused on seeking fees for Alberts'
efforts to set aside the order granting summary judgment.  As to

48

the motion to vacate (the conduct for which fees should be
awarded to Epstein Becker), the dispositive issue was not whether
Alberts had a good faith, non-reckless basis for the allegations
in the complaints, but whether he had a good faith, non-reckless
basis for believing that he was entitled to pursue the motion to
vacate after Epstein Becker had made clear that it would not
extend the time for Alberts to conduct discovery because it
wanted the deadline for opposing the motion for summary judgment
to be a firm deadline.  It was unnecessary to load on a detailed
discussion of how the complaints themselves had been unfounded,
and this court concluded that the complaints themselves were not
a basis for imposing sanctions against Alberts.  Had Epstein
Becker limited its motion for sanctions to Alberts motion to
vacate, the time spent on the motion for sanctions would have
been substantially reduced.

Epstein Becker bore the burden of showing the reasonable
fees that ought to be attributed to Alberts' sanctionable
misconduct.  DLA Piper charged $160,844.30 for 350.75 hours
planning and litigating the motion for sanctions.  In my
estimate, 117 hours (roughly one-third of the 350.75 hours) is
how much time, of DLA Piper attorneys and paralegals, the pursuit
of a motion for sanctions for Alberts' misconduct in May 2007
would **reasonably** have entailed.  Epstein Becker elected to seek
sanctions for conduct beyond Alberts' misconduct in May 2007.  To

49

the extent that this has resulted in its being unable to show
that it would have spent more than 117 hours addressing that
misconduct in a motion for sanctions limited to such misconduct,
that is a problem of its own making.  It recognized early on that
there was a possibility that not all of Alberts' conduct would be
sanctionable, but did not attempt to keep time records isolating
time devoted to seeking sanctions for Alberts' misconduct in May
2007.  Furthermore, it elected not to put on testimony or to make
argument attempting to explain what a motion for sanctions
limited to the misconduct in May 2007 would have entailed.
Accordingly, I am limited to finding the compensable time as
being that which based on my familiarity with the proceeding, I
can with confidence say, would have been time reasonably required
to pursue such a motion.

To the extent that Alberts objects that Epstein Becker has
failed to show that even 117 hours is a sound estimate of such
time, I overrule that objection.  Sanctions law in the District
of Columbia Circuit is not a paradigm of clarity, so some
substantial time was needed to research that law.  In addition,
some time had to be spent to set the background to show that
there was absolutely no question that Epstein Becker intended the
deadline for opposing summary judgment to be one it would not
consent to alter, and why it so intended.  Then, writing the
motion to apply sanctions law to the facts would have taken some

time.  Moreover, there were incidental aspects of the motion for
sanctions (such as Epstein Becker's successful motion to unseal
settlement negotiation papers and Alberts' unsuccessful motion to
submit documents under seal) that would have been litigated
regardless of the scope of the motion for sanctions.  Finally,
the hearing on the motion for sanctions would have been necessary
(even if not of the duration it took because the motion for
sanctions went for broke and sought sanctions for the entire
adversary proceeding).  However, without testimony or argument to
assist the court, explaining in detail what a limited motion for
sanctions would have entailed, I am unable to find that more than
117 hours would have been necessary.

Accordingly, Epstein Becker has only demonstrated that 117
hours out of 350.75 hours billed (33.36% of the time billed)
would  have reasonably been incurred in pursuing a properly
limited motion for sanctions.  It follows that a reasonable
estimate of the fees that would have been charged had Epstein
Becker limited its request to fees arising from Alberts' efforts
to set aside the grant of summary judgment is 33.36% of
$160,844.30 or **$53,657.66**.  That is the amount Epstein Becker is
entitled to recover in that regard.

V

**EPSTEIN BECKER IS ENTITLED TO RECOVER
$3,663.05 IN EXPENSES RELATED TO THE MOTION FOR SANCTIONS**

November 5, 2007 Bill. DLA Piper charged $1,884.51 on its
November 5, 2007 bill for expenses incurred in September 2007.
Of that, $1,871.31 was for Westlaw charges, and those charges
would have been incurred even if the motion for sanctions
addressed only Alberts' May 2007 misconduct.  The remaining
$13.20 is a September 24, 2007 disbursement for duplicating
charges.  DLA Piper was working in this proceeding only on the
motion for sanctions in September 2007, and this modest charge
will be allowed.  Accordingly, $1,884.51 of this bill will be
awarded.

November 15, 2007 Bill. DLA Piper charged $1,670.78 on its
November 15, 2007 bill for expenses disbursed in October 2007.
These all related to the ongoing pursuit of the motion for
sanctions.

The Westlaw and Lexis charges for computer legal research,
standing at $513.99, and $62.48 in PACER charges, will be
awarded.  Similarly, $18.81 in delivery services to Robert E.
DeRight, Jr. will be awarded.  I do not believe that it is
appropriate to treat a portion of those as expenses that would
*not* have been incurred had Epstein Becker's motion for sanctions
been limited to Alberts' misconduct in May 2007.

The remaining charge is $1,075.50 for duplicating 10,755

52

copies at $.10 per page.  Epstein Becker has not challenged
Alberts' contention that at least one-half of the duplicating
charges in this and the next bill related to the copying of DLA
Piper fee statements from the beginning of the case.  In
addition, some of the other papers submitted to the court could
have been trimmed to a smaller number of pages (such as by
eliminating arguments or exhibits relating solely to conduct
other than Alberts' May 2007 misconduct).  Epstein Becker did not
offer testimony to provide some way for the court to allocate the
$1,075.50 in duplicating charges in response to Alberts'
objection.  Nevertheless, I feel comfortable that 30 percent of
the photocopies were appropriate.  Setting the background for
what happened in May 2007 required introducing a substantial
number of documents that related to events prior to May 2007.  I
will reduce this charge to 30 percent, that is, to $322.65.
Accordingly, a total of $917.93 in charges on this bill will be
awarded.

     December 7, 2007 Bill.  This bill included $22.09 in
delivery services on October 16, 2007 to the court, and that
amount will be awarded.  It also includes $1,999.20 in
duplicating charges, and as in the case of the prior bill I will
reduce that to 30 percent, which is $599.76.  Accordingly, a
total of $621.85 will be awarded on this bill.

     January 17, 2008 Bill.  The travel charges of $238.76 on

this bill will be awarded.

    <u>Total Awarded</u>.   A total of **$3,663.05** of the foregoing bills
will be awarded.

VI

THE CHARGES OF ROBERT E. DERIGHT, JR.

    Alberts objects to the time and expenses charged by Robert
E. DeRight, Jr. on the basis that DeRight is an employee of
Epstein Becker, but DeRight's affidavit establishes that he is an
employee of his own firm and serves as "Professional Liability
and Risk Counsel" for Epstein Becker.   His affidavit states that,
in that role, he has negotiated fee arrangements with outside
counsel, that DLA Piper's bills were addressed to him, and that
he "personally approved them and forwarded them to the
appropriate persons at EBG for payment."   He appears to have been
hired by Epstein Becker for the purpose, in part, of monitoring
and supervising DLA Piper's performance, and reporting to Epstein
Becker in that regard.[19]   As Professional Liability and Risk
Counsel, however, he also played an important role in addressing

---

    [19]  For example, Carrigan's time entries for August 3, 2007,
include:

      communications with Robert DeRight regarding proposed 28
      U.S.C. Section 1927 Motion (N/C); begin, in part in
      conjunction with N. Dilloff, to **outline response to R.**
      **DeRight request including case evaluation and budget**
      (.30)[.]

(Emphasis added.])

54

Epstein Becker's efforts to exonerate its good name against
Alberts' charges of impropriety.  Alberts' allegations of
impropriety were naturally a matter of grave concern to Epstein
Becker who cannot be faulted for having DeRight review and make
suggestions regarding DLA Piper's opposing Alberts' motion to
vacate, and regarding DLA Piper's seeking sanctions for fees and
expenses occasioned by that motion to vacate.

DeRight's time entries for May 9, 10, 18, 21, 23, 24, and
25, 2007 (aggregating 15.0 hours at $325.00 per hour) are
sufficiently detailed to permit me to treat that time as arising
because of Alberts' misconduct (as these entries relate to the
motion to vacate and the related motion in limine).  That comes
to **$4,875.00**.

DeRight also participated with respect to the motion for
sanctions.  DeRight's time entries for August 3, 8, 9, 10, 28,
and 30, 2007, for September 19 through 27, 2007, for October 4
through October 24, 2007, and for November 16 through 28, 2007
(aggregating 40.50 hours at $325.00 per hour) are sufficiently
detailed to permit me to treat that time as related to seeking
sanctions.  As in the case of DLA Piper's time on that motion,
DeRight's time ought not be reimbursable to the extent that it
arose because Epstein Becker sought fees and expenses for the
entire case instead of restricting itself to seeking fees and
expenses for the motion to vacate.  Accordingly, as in the case

of DLA Piper, I will allow only 33.36% of his time.  That comes to **$4,391.01** (the result of .3336 x 40.5 hrs. x $325/hr.).

Epstein Becker sought $1,479 in car and airfare fees for DeRight, but DeRight's invoices submitted and paid by Epstein Becker (Ex. 13A) only sought $227.00 in expenses for the May 25, 2007 trip and $217.20 for the November 27, 2007 trip. Accordingly, Epstein Becker is entitled to reimbursement of only **$444.20** with respect to expenses incurred and billed by DeRight, and paid by Epstein Becker.

In all, Epstein Becker is entitled to recover **$9,708.20** in fees and expenses paid with respect to DeRight ($4,875.00 with respect to the motion to vacate, $4,391.01 with respect to the motion for sanctions, and $442.20 in expenses).

VI

### FEES AND EXPENSES FOR THE
### SUBMISSION OF FEES STATEMENT PURSUANT
### TO COURT'S RULING AND FOR LITIGATION REGARDING THAT SUBMISSION

Epstein Becker seeks fees for submitting the fee statement pursuant to the court's prior ruling, and preparing for the hearing on that fee statement.  The invoices in evidence in this regard for which it seeks recovery from Alberts are:

| Date of Invoice | Fees | Expenses |
|---|---|---|
| September 10, 2010 | $9,557.50 | $867.33 |
| October 13, 2010 | 5,550.00 | 116.89 |
| November 4, 2010 | 8,175.00 | 114.20 |
| TOTALS | $23,282.50 | $1,098.42 |

This is an inflated claim, as to both fees and expenses.

As to fees, the time entries include e-mails on August 12, 2010, "regarding appealing Judge Teel's decision" followed by another attorney's time spent that same date on "research issues" (presumably meaning researching appeal issues), and similar time entries on other dates regarding appellate issues.  Because it is often impossible to tell whether a time entry addresses consideration of an appeal or, instead, preparation of a fee statement, the time entries are often of no assistance in ascertaining how much time was spent on preparing the fee statement.

In addition, the time working on a reply to Alberts' opposition added nothing except as to one issue, addressed by a single paragraph, that should have taken 3.00 hours of attorney time to address (that issue being DeRight's being employed by his own firm and the fact that his invoices would be submitted at the hearing).  The other issue addressed was Epstein Becker's plainly erroneous contention that it should be compensated for all of the fees incurred in pursuing the motion for sanctions, and Epstein Becker ought not be compensated for the fees in that regard. Accordingly, with respect to the preparation of a reply, all but one hour of N. Dilloff (who reviewed the reply) and two hours of Cathell (who principally prepared the reply) will be compensated as necessary.

The hours of attorney time that I will disallow based on the

foregoing are:

| Date | N. Dilloff | Cathell |
|------|-----------|---------|
| 08/12/10 | 0.20 | 1.10 |
| 08/13/10 | 0.20 | 0.40 |
| 08/16/10 | 0.30 | 0.20 |
| 08/17/10 | 0.00 | 0.30 |
| 08/18/10 | 0.30 | 0.00 |
| 08/19/10 | 0.80 | 2.00 |
| 09/24/10 | 0.00 | 0.40 |
| 09/29/10 | 0.30 | 0.30 |
| 10/01/10 | 0.20 | 0.00 |
| 10/04/10 | 0.80 | 1.20[20] |
| 10/05/10 | 0.10 | 0.80 |
| 10/06/10 | 0.00[21] | 0.50 |
| TOTALS | 3.20 | 7.20 |

That comes to a $4,460.00 reduction ($1,760.00 for Dilloff plus $2,700 for Cathell).

As to expenses, those include $886.82 in Westlaw and Lexis charges which, although relevant to appellate issues, ought not have been necessary to prepare a fee statement.

Finally, when Epstein Becker submitted inflated claims for litigating the pursuit of sanctions, including for work that plainly was not compensable, this necessarily prolonged the disposition of this matter.  Moreover, Epstein Becker insisted upon a hearing being held.  Alberts, in contrast, attempted to dispense with the necessity of a hearing, and agreed to the

---

[20]  I am treating the two hours of the 3.20 hours of Cathell's time on this date as the time that was reasonable and necessary time for preparing a reply.

[21]  One hour of N. Dilloff's time on this date was devoted to the reply, and I am treating that as the one hour of his time that was reasonable and necessary time relating to the preparation of a reply.

admission into evidence of all of Epstein Becker's exhibits, and, in turn, Epstein Becker presented no further evidence.  The only argument Epstein Becker urged at that hearing was a reprise of its unsuccessful arguments in favor of recovering fees for *all* of the adversary proceeding.  In the exercise of my discretion, I will not award any fees or expenses for the period after the submission of the November 4, 2010 bill beyond **$2,000.00**, the amount I think would have sufficed to agree to dispense with the hearing and to submit an agreed record.  If Alberts wishes to contest even an award of that amount, he may file a motion under Fed. R. Bankr. P. 9023.

VII

PREJUDGMENT INTEREST

Epstein Becker's Motion for Excess Expenses and Attorneys' Fees did not seek prejudgment interest.  Its Memorandum of Costs, Expenses and Attorneys' Fees merely requests interest, and the accompanying proposed order seeks interest, at an unspecified rate, "commencing on the date when Sam J. Alberts' motion to vacate summary judgment in favor of Epstein Becker and Green, P.C. was filed . . . ."  This, again, is overreaching by Epstein Becker.  If interest were recoverable, it would be computed from the date on which Epstein Becker paid the fees that it is recovering.  Nor has Epstein Becker presented evidence as to an appropriate rate of interest to make it whole.  Epstein

Becker has presented no authority for the imposition of prejudgment interest, and I have found no decision in which fees were awarded under 28 U.S.C. § 1927 and prejudgment interest was awarded with respect to those fees. Although prejudgment interest might be recoverable on such an award in an appropriate case, various factors counsel against awarding prejudgment interest in this case.

The delay in arriving at a final judgment in this proceeding, and in Epstein Becker's making a recovery from Alberts, is attributable in part to Epstein Becker's decision to seek attorneys' fees for *all* of this adversary proceeding. That resulted in substantial judicial time devoted to hearing and rejecting Epstein Becker's motion as to all aspects other than fees and expenses related to Alberts' efforts to undo the grant of summary judgment. When Epstein Becker sought all of the attorney's fees associated with the motion for sanctions, despite clear notice from the court that it ought not, that then resulted in difficulty in fixing the precise amount that could be deemed to have been incurred by reason of the motion to vacate. The delay in Epstein Becker's obtaining a judgment against Alberts is not Alberts' fault. Further, if I were to entertain Epstein Becker's request for prejudgment interest, to which it has paid scant attention, that would require further briefing and potentially another hearing, and inject even further delay in

60

reaching a final judgment.  In light of all of the foregoing
circumstances, I will deny the request for prejudgment interest.

VIII

CONCLUSION

Pursuant to the foregoing, the court will award $124,401.51
in favor of Epstein Becker against Alberts:

| | |
|---|---:|
| DLA Fees for Motion to Vacate | $54,827.50 |
| DLA Expenses re Motion to Vacate | $545.10 |
| DLA Fees for Motion for Sanctions | $53,657.66 |
| DLA Expenses re Motion for Sanctions | $3,663.05 |
| DeRight | $9,708.20 |
| DLA Not Yet Billed | $2,000.00 |
| **TOTAL** | **$124,401.51** |

A final judgment follows.

[Signed and dated above.]

Copies to:

All counsel of record.